**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-11130

_____


WILLIAM B. PILCHER,

Plaintiff-Appellant,

versus

CONTINENTAL ELECTRONICS CORP.,

Defendant-Appellee.


_____

Appeal from the United States District Court
For the Northern District of Texas
(93-CV-1743)

_____


July 8, 1997



Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In this Age Discrimination in Employment Act[1] (ADEA) case, Plaintiff-Appellant William B. Pilcher (Pilcher) appeals the district court's grant of Defendant-Appellee Continental Electronics Corporation's (CEC) motion for summary judgment, concluding that Pilcher had failed to establish a claim under the ADEA. In our de novo review we find that issues of material fact exist as to (1) whether Pilcher bore his burden of presenting a prima facie case of age discrimination, and (2) if so, whether CEC's proffered reason for his discharge —— one of a number of employment actions taken as part of a RIF —— was merely a pretext for a discriminatory replacement situation. Accordingly, we reverse.

I

FACTS AND PROCEEDINGS

Pilcher graduated in 1960 from Texas Technological University with a B.S. in electrical engineering. After receiving his degree, Pilcher went to work for CEC as a Staff Engineer and Valve Engineer Coordinator. CEC manufactures radio transmitters and other products and performs contract work related to the United States government and the defense industry. In 1969, Pilcher received an M.B.A. from North Texas State University while working for CEC.

In 1970 Pilcher left CEC and thereafter worked in a number of different jobs, most notably as Contracts Manager for UTL

---

[1] 29 U.S.C. § 621 et seq.

Corporation (UTL) from 1977 through 1987. UTL's business was 85 percent government contracts and 15 percent domestic and international commercial contracts. Pilcher negotiated contracts, supervised contract administration, and assisted in contract proposals.

In 1987 Pilcher returned to CEC to become Manager of Contract Administration. Over time he assumed additional responsibilities, and in 1991 he was promoted to Manager of Contracts and Proposals, in CEC's Finance Department. Pilcher's yearly performance reviews encouraged him to identify and train a successor, which he assumed would clear the way for him to be promoted.

Meanwhile, in 1990, Lonnie Roberts had joined CEC as Vice-President of Finance. In September 1991, CEC hired John Newell, age 42, for the position of Government Contracts Administrator. Newell had graduated *cum laude* from the College of St. Thomas and had received a law degree from the University of Iowa College of Law.

At about the same time that Newell was hired, Pilcher was promoted to Manager of Contracts and Proposals, which entailed increased responsibility, including serving as Newell's supervisor. In November 1991, just two months after Newell's arrival, CEC informally changed his title to Department Head, Contracts Administration; and in January 1992, Newell was formally promoted to that position.

On January 17, 1992, CEC terminated Pilcher, age 61, purportedly as part of a RIF, which CEC asserts was necessitated by a substantial reduction in its government contracts business. CEC explains that, based on Lonnie Roberts' suggestion, it had decided to reduce its managerial staff and to implement a concomitant consolidation of managerial responsibilities into the duties of the managers who remained. In fact, Pilcher was one of 37 CEC employees who were fired on the same day. Of those 37 employees, seven whose average age was fifty years were from Pilcher's department; however, Newell was never considered for termination. Two other older employees, both women, were terminated during the alleged RIF. Like Pilcher, those women are alleged to have been required to train their younger successors before they were fired.[2]

Pilcher insists that when he was laid off he was informed by both Newell and Lonnie Roberts that Newell would be taking Pilcher's place. Indeed, Newell did assume Pilcher's government contracts responsibilities and began supervising the remaining employees whom Pilcher had been supervising. Newell also assumed Pilcher's other responsibilities — Spares as well as Pricing and Proposals. Sometime later, other employees assumed some of Pilcher's previous duties, as his position was ultimately

---

[2]Jan Krummrich, age 54, was Manager of Government Products in Pilcher's department and reported to Roberts. Maurine Heaton, age 60, held the position of Accounting/Financial Specialist. However, she did not report to Lonnie Roberts, but instead was supervised by Robin Roberts.

4

reorganized.

Pilcher filed suit against CEC in August 1993. CEC filed a Motion for Summary Judgment in January 1996. In August 1996, the district court granted CEC's motion, concluding that there was no direct evidence of intentional age discrimination and that Pilcher had failed to establish a prima facie case through indirect evidence.

II

ANALYSIS

A. STANDARD OF REVIEW

On appeal from summary judgment, we review the record *de novo* "under the same standards which guided the district court."[3] Summary judgment is appropriate when no issue of material fact has been shown and the moving party is entitled to judgment as a matter of law.[4] In determining whether summary judgment was proper, all facts are viewed in the light most favorable to the nonmovant.

The granting of summary judgment is especially questionable in employment discrimination cases,[5] as these cases involve "nebulous questions of motivation and intent."[6] Thus, when any facts are in

---

[3]Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir. 1988).

[4]FED.R.CIV.P. 56(c).

[5]Hayden v. First Nat'l Bank, 595 F.2d 994, 997 (5th Cir. 1979).

[6]Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 640 (5th Cir. 1985).

5

dispute, summary judgment is generally inappropriate.[7]  A plaintiff

should withstand summary judgment when he has created a genuine

issue of material fact, even if he has failed to establish all the

elements of his case by a preponderance of the evidence.[8]

B.  APPLICABLE LAW

Under the ADEA, it is unlawful for an employer to discharge an

employee based on age.[9]   A plaintiff must prove intentional

discrimination to establish a violation.  "Because direct evidence

of employment discrimination is rare, courts have devised <u>indirect</u>

or <u>inferential</u> methods of proving such discrimination,"[10] following

the three-step <u>McDonnell Douglas</u> burden-shifting analysis.[11]

i.  <u>Did Pilcher establish a prima facie case</u>?

In <u>step 1</u>, a plaintiff must present a prima facie case; if

successful in so doing, he establishes a rebuttable presumption of

discrimination.[12]   A prima facie showing of age discrimination

requires a plaintiff to present proof that he was: (1) discharged;

---

[7]<u>Id.</u> at 641.

[8]<u>Id.</u> at 641 n.8.

[9]29 U.S.C. § 623(a)(1).

[10]<u>Davis v. Chevron U.S.A., Inc.</u>, 14 F.3d 1082, 1085 (5th Cir. 1994) (citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

[11]<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 668 (1973).

[12]<u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 149 (5th Cir. 1995).

(2) qualified for the position; (3) within the protected class; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.[13]  Generally, when an employee has been replaced, prongs (i) and (ii) of the fourth element apply; and when there has been a RIF, prong (iii) applies.[14]  To establish a prima facie case in a RIF situation, the plaintiff is required to present evidence showing that the employer did not treat age as a neutral factor in its decision-making process.[15]  What is suspicious is not the firing of a qualified, older employee, but the firing of such an employee while retaining younger employees.[16] When this occurs, the employer is required to articulate a nondiscriminatory reason for that decision.[17]

Pilcher contends that he was replaced by Newell and insists that Newell assumed Pilcher's responsibilities.  We have previously held that a plaintiff is entitled to a jury trial when he presents evidence that some of his duties were assumed by a replacement

---

[13]Id. at 149, (citing Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993)).

[14]Meinecke v. H & R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995).

[15]Armendariz, 58 F.3d at 150, (citing Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 812 (5th Cir. 1991)).

[16]EEOC v. Manville Sales Corp., 27 F.3d 1089, 1096; Thornbrough, 760 F.2d at 644.

[17]Thornbrough, 760 F.2d at 644.

employee.[18]  We today conclude that the summary judgment evidence in the instant case presents a genuine issue of material fact as to whether Pilcher was replaced or merely terminated as part of a RIF.

According to Pilcher, during the six months preceding his termination, Newell held himself out to a representative of a third party contractor as Manager of Contracts.  In Pilcher's performance review,  CEC had encouraged a more aggressive search for his own successor.  Newell claims that following Pilcher's layoff, he (Newell) "took over."  Other employees confirm that Newell was "in [Pilcher's] office" and "assumed" Pilcher's duties.  The record indicates that Newell assumed managerial responsibility for existing projects, as well as for proposals and spares.

CEC's organizational charts show that Pilcher's former position was not reorganized until approximately six months after his layoff.  And, when it was reorganized, Newell ceased to manage spares; CEC had transferred that responsibility to another department.  By 1994, Newell was no longer responsible for pricing or proposals.  Newell's sole remaining responsibility was managing contracts, which had represented approximately 60 percent of Pilcher's workload.

We have not seen any summary judgment evidence to suggest that Newell's position following Pilcher's layoff was anything other than a one-on-one replacement.  There is no evidence that several

---

[18]See Young v. City of Houston, Texas, 906 F.2d 177, 182 (5th Cir. 1990).

jobs were conflated into one; instead, Newell simply assumed all of Pilcher's responsibilities, no more and no less. As Newell acquired his original position, Government Contracts Administrator, only months preceding Pilcher's layoff, CEC appears to have replaced the older Pilcher with the younger Newell. His responsibilities appear to have been identical to Pilcher's for the first six months following Pilcher's firing. Although the position was eventually restructured, its essence — managing contracts — remained the same.

CEC insists that Pilcher's firing was entirely motivated by its plans under the RIF. RIF cases — particularly those involving grants of summary judgment — generally involve facts that clearly dictate such a finding, unlike the murky, ambiguous facts of the instant case. For example, in Meinecke v. H&R Block of Houston, we found a RIF to be an adequate explanation when an employer had eliminated an employee's position, closed the office in which the discharged employee had worked, and distributed the employee's duties among other employees as part of a reorganization.[19] In Armendariz v. Pinkerton Tobacco Co., we found a RIF to be a creditable reason for termination when an employer discharged the employee, assigned a small portion of his work to another employee without granting a pay increase to the assignee of that work, and assigned the bulk of the first employee's work to an independent

_____

[19]66 F.3d at 84.

broker.[20]  We found that the position in question truly had been eliminated.[21]  Finally, in <u>Brown v. CSC Logic, Inc.</u>, we found that when a younger employee had been assigned some of the duties of a terminated employee sixteen months prior to termination and the remainder of the duties had been assumed by an older employee, this employee's position was legitimately eliminated in a RIF.[22]

CEC relies heavily on the Sixth Circuit's opinion in <u>Barnes v. GenCorp., Inc</u>.[23] to support its argument that Pilcher was not replaced.  To the contrary, though, <u>Barnes</u> supports our conclusion that a genuine  issue of material fact exists regarding whether Pilcher was replaced.  According to <u>Barnes</u>, a RIF occurs when business considerations cause an employer to

> eliminate one or more positions within the company.  An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge.  However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.[24]

Technically, Newell was an existing employee who assumed

---

[20]58 F.3d at 149–50.

[21]<u>Id.</u> at 150.

[22]82 F.3d 651, 655 (5th Cir. 1996).

[23]896 F.2d 1457 (6th Cir. 1990).

[24]<u>Id.</u> at 1465.

10

related duties upon Pilcher's termination.  It is incongruous, however, to allow an employer to evade the finding of "replacement" by simply: (1) determining the need for an assistant manager; (2) filling that position with a younger employee; (3) determining a need for a RIF; (4) terminating the older manager, without even considering the younger employee for layoff; and, (5) consolidating the two positions so that the younger employee assumes essentially all of the duties for which the older employee had been responsible.  Even though it is not plain from the record that this series of events occurred, there is sufficient summary judgment evidence in the record on appeal to establish a prima facie case and create a jury question.

ii.  Did CEC articulate a legitimate, nondiscriminatory reason for its decision?

We are constrained in this case to proceed to step 2 of the McDonnell Douglas burden-shifting analysis.  Because Pilcher made a prima facie showing of age discrimination, it was incumbent on CEC to establish a legitimate, nondiscriminatory reason for its decision to terminate him.[25]  Toward this end, CEC maintains that the RIF was necessary due to a decrease in overall sales and a decrease in government contracts.  According to CEC, age was not a factor it considered in the decision to terminate Pilcher; rather, that decision was based on Lonnie Roberts' recommendation to eliminate superfluous managerial and supervisory personnel while

_____

[25]Armendariz, 58 F.3d at 149.

11

expanding the responsibilities of the managers who remained. Facially, this is a legitimate, nondiscriminatory reason, and is sufficient to shift responsibility back to Pilcher to establish pretext.

iii.  Was CEC's reason a pretext?

The law is well settled that when an employee establishes a prima facie case and the employer responds with a benign reason, we proceed to step 3 of the McDonnell Douglas minuet: Once the employer has met the burden of articulating a legitimate, nondiscriminatory reason, the presumption of discrimination fades and the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is a pretext for unlawful discrimination.[26]  To establish pretext, a plaintiff cannot merely rely on his subjective belief that discrimination has occurred.[27] Rather, he must demonstrate discriminatory intent "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[28]  The critical test is whether age "actually played a role in" and "had a determinative

---

[26]Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

[27]Waggoner v. City of Garland, Texas, 987 F.2d 1160, 1166 (5th Cir. 1993).

[28]Texas Dept. of Community Affairs v. Burdine, 101 S.Ct. 1089, 1095 (1981); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir. 1988); Hall v. Gillman, Inc., 81 F.3d 35, 37 (1996).

12

influence on" the employer's decision-making process.[29]  To avoid summary judgment, however,  a plaintiff is not required to prove pretext; he need only raise a genuine issue of fact regarding pretext.[30]  As we stated recently, "a plaintiff can avoid summary judgment if the evidence taken as a whole, (1) creates a fact issue as to whether each of the employer's stated reasons were what actually motivated the employer, and (2) creates a reasonable inference that age was a determinative factor in the actions of which the plaintiff complains."[31]

Pilcher asserts that CEC's proffered reason for his layoff —— a RIF brought on by a dramatic decrease in government contracts —— is a pretext.  He claims to have had enough work to keep him busy for the next few years.  He also points to the fact that the younger Newell was hired specifically to work in government contracts just three months prior to the RIF, yet was never considered to be a candidate for layoff.  CEC counters with evidence that government contracts constituted a decreasing portion of its total revenue, with such business reaching its nadir in 1992, the year Pilcher was laid off.  CEC also adduced evidence that its total sales decreased each year after 1990.

---

[29]Armendariz, 58 F.2d at 149, (citing Hazen Paper Co. v. Biggins, 113 S.Ct 1701, 1706 (1993)).

[30]Thornbrough, 760 F.2d at 646.

[31]Hall, 81 F.3d at 37 (citing Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc)).

13

Even if we assume that a decrease in government contracts necessitated a RIF at CEC, the essential inquiry remains whether the otherwise justified RIF was used to mask an age discriminatory replacement situation. A RIF —— a benign reason for layoffs —— cannot be used surreptitiously to effect age discrimination. Further, the fact that Newell had a law degree does not validate CEC's decision to retain him, as the company stated that a law degree was not a criterion of eligibility for the position. We conclude in this case that, in light of the strong replacement facts and other evidence, a jury could reasonably find that Pilcher's age was a determinative influence on Pilcher's discharge.

Pilcher's evidence of a one-on-one replacement by Newell is supported by additional evidence of age discrimination. Pilcher has shown that two other older employees were laid off after being required to train their own younger successors. The record shows also that Lonnie Roberts stated that CEC employees didn't "walk with a purpose" and that upon meeting Pilcher he inquired about his heart condition. Even though these comments could be interpreted as mere chance remarks, they are susceptible of being interpreted as reflecting an age bias as well. Pilcher also contends that Roberts treated older employees more harshly than younger employees. Finally, Pilcher states that during Newell's job interview, at which Pilcher was present, Roberts stated that Pilcher was "retiring."

14

In <u>Atkinson v. Denton Publishing Co.</u>,[32] we reversed summary judgment for an employer after finding that the discharged employee had presented sufficient evidence to create genuine issues of material fact as to whether the employer's reasons for his discharge were pretextual. The employee in <u>Atkinson</u> submitted evidence to rebut the employer's articulated reason, as well as evidence that the general manager: (1) preferred to deal directly with the younger, less experienced subordinates; (2) told another employee that he preferred solving problems with younger employees because the discharged employee had "old ideas and old ways"; (3) gave raises to younger employees while withholding them from older employees; and (4) laid off other older employees and replaced them with younger workers.[33] Here, Pilcher, like the plaintiff in <u>Atkinson</u>, offered summary judgment evidence that we deem sufficient to create a jury question on pretext.

III

CONCLUSION

Inasmuch as our plenary review satisfies us that Pilcher did establish a prima facie case of age discrimination and presented sufficient summary judgment evidence to demonstrate the existence of a genuine issue of material fact regarding the RIF as possible pretext for discriminatory replacement, we reverse the summary

---

[32] 84 F.3d 144 (5th Cir. 1996).

[33] <u>Id.</u> at 149-50.

15

judgment granted by the district court in favor of CEC and remand for further proceedings consistent herewith.

REVERSED and REMANDED.